### Application of MARGATE UTILITIES CORPORATION.
Nos. 6526-W and 6527-S.

Railroad & Public Utilities Commission.
September 19, 1962.

Howard C. Osterman, Margate, for applicant.

William D. Sanders, City Attorney, for City of Margate.

Joseph C. Siegel, Margate, for Margate Civic Association.

Gilbert C. Wyand, Margate, for City of Margate.

James L. Graham, Jr., Assistant General Counsel, for the commission staff and the public generally.

Chairman WILBUR C. KING, Commissioners JERRY W. CARTER and EDWIN L. MASON each participated in the disposition of this matter.

BY THE COMMISSION.

The entire record herein, including the application and the testimony adduced at the public hearing, has all been examined by the full commission. Being fully advised in the premises, the commission now enters its order in this cause.

The applicant is a Florida corporation organized in September, 1955, which came under the jurisdiction of this commission on September 29, 1959, by virtue of appropriate action of the board of county commissioners of Broward County. On December 14, 1960, it was issued certificates WS-25 and SS-21 authorizing the continued operation of its water and sewer plants and systems in Broward County. In November, 1961, the applicant requested rate increases for both water and sewer operations on the grounds that they had been operated at a substantial loss during recent years. Hearings were held with respect to such applications on February 22, 1962, and were continued for further hearing on March 27, 1962.

These applications must be handled by the commission in the manner contemplated by chapter 367, Florida Statutes, which became effective in June, 1959. This law provides in subsection (7) of section 367.14 that water and sewer utilities be allowed "a fair return on the fair value of the property of the public utility used and useful in the public service as evidenced by the engineering report required by section 367.12(2) and in all rate proceedings thereafter a fair return on the initial fair value of the property of the public utility used and useful in the public service together with the original cost of all net additions to such property thereafter."

The commission's difficulty in applying this provision of this law has already been discussed at length in order no. 3425 (dockets no. 6426-W, 6427-W, and 6428-S), and the remarks made therein in such regard and the interpretations there adopted are applicable also in this order and are adopted by reference.

*Docket No. 6526-W — Water Division*
*Rate Base*

*Plant in Service.* The applicant's figure for water plant in service was the sum of the depreciated fair value appraisal figure of $868,885 and the original cost of all net additions to the plant from the date of the appraisal (September 29, 1959) to the end of the test year (August 31, 1961) in the amount of $308,293.84, or a total of $1,177,178.84. In accordance with the commission's interpretation of this law it is necessary that all computations for rate making purposes after the date of the engineer's appraisal should be on an original cost basis (see order no. 3425). Therefore, it was necessary to reduce the company's undepreciated valuation of its plant in service by $195,319.91 which represents the contributions in aid of construction received by the company between September 29, 1959 and August 31, 1961. Also, such valuation has been reduced by $25,000 which is claimed on account of land held for future use because such holdings are not part of the plant which is used and useful in the public service. We have, therefore, found that the water plant in service should be $992,642.93. (It will be noted that the company figure referred to here includes a deduction for depreciation of $35,784 while the commission figure does not. This is further explained below in the comments on depreciation reserve.)

*Depreciation Reserve.* The commission has calculated a depreciation reserve based on the gross fair value of the applicant's depreciable water plant in service as evidenced by the engineer's report and on the additions to the plant since such report. The only depreciation reserve employed by applicant in its calculation was the $35,784 figure set out in the engineer's report (or fair

value study as he called it). It has, therefore, made no calculation for depreciation accruals since the date of the study on the plant as it existed then or on the additions to such plant to the end of the test year. The commission's calculation, including the $35,784, comes to $65,434.22.

*Cash Working Capital.* The company has calculated an amount under this heading on the basis of 1/6 of what it terms "total operating expenses" which included interest expense of $16,707.30, taxes other than income of $9,201.82, as well as a year-end cash balance of $13,647.11. The commission has traditionally considered, however, that ⅛ of the operating expense is adequate and has allowed for cash working capital the amount of $5,003.72 by applying such fraction to operating expense as hereinafter calculated and approved.

*Materials and Supplies.* The amount of $1,099.76 approved for this item is ½ of the amount claimed by the company for both water and sewer operations or ½ of $2,199.52. Although this is a year-end figure, it has to be allowed here despite our preference for an average balance for each division since such average figures are unobtainable.

*Customers' Deposits.* This item, amounting to $13,560, is again ½ of the total for both water and sewer operations which is $27,120. This is a customary deduction in rate base computations. No interest was paid on such deposits during the test year.

The rate base advanced by the company amounted to $1,203,-120.23, while with the various adjustments the commission finds the rate base to be $919,752.19.

### Net Operating Income, Actual Operations

No detailed observations are considered necessary under this heading since, as is shown below, the commission's calculations are more favorable to the company's case than its own calculations. One divergence of opinion here is as to operating expense which the company overstated by an improper allocation of administrative and general expenses between the water and sewer divisions, the company allocation being based on the operating revenue of each rather than on the more logical relationship of their expenses. Also adding to the overstatement of operating expense was the improper inclusion of executive life insurance expense.

Another difference of opinion is found with regard to depreciation expense which the applicant has understated. The commission's position on this expense is evidenced by the treatment already given the depreciation reserve.

The summary of net operating income calculations advanced by the company as compared to that approved by the commission is as follows—

|  | Company | Commission |
|---|---|---|
| Operating Revenues | $ 65,428.65 | $ 65,428.65 |
| Operating Expenses | $ 41,258.05 | $ 40,029.72 |
| Depreciation | 12,400.50 | 16,600.73 |
| Taxes Other Than Income | 9,201.82 | 9,201.82 |
| Total Operating Expenses | $ 62,860.37 | $ 65,832.27 |
| Net Operating Income | $ 2,568.28 | $ (403.62) |

Since our calculations result in there being no net operating income, it is apparent that the application of such minus figure to the rate base would reveal a negative rate of return for the water division. By the company's calculation its current rate of return is .21%.

### Net Operating Income Under Proposed Increased Rates

The company has produced evidence showing that the rate increases which it proposes would have produced during the test year an operating revenue of $83,949.44. Using the same deductions, with one exception, that were approved by the commission (see chart above relative to net operating income), we arrive at a reasonable approximation of the net income that would be realized from the proposed rates. The only exception would be that the figure for taxes other than income would necessarily increase from $9,201.82 to $9,951.92 because of the effect of gross receipts taxes that would increase with the gross revenue increase.

The result is that by increasing gross revenue to $83,949.44 from the present $65,428.65 (an increase of $18,520.79 or 28.58%) the company will realize a net operating income for water division, if the proposed rates are allowed, of $17,367.07 annually. Applying this figure to the commission approved rate base, we find that it constitutes a rate of return of 1.89%.

### Docket No. 6527-S — Sewer Division
### Rate Base

*Plant in Service.* As in the consideration of this point in the previous application, dealt with in the first part of this order, we have arrived at the evaluation of plant in service by taking the undepreciated appraised value of the plant from the engineer's report, or fair value study, added the original cost of all net additions since the date of the study and then deducted all contributions in aid of construction received since the study as

well as $25,000 which represented land held for future use and not used and useful in the public service. Thus, the company figure of $2,161,630.56 has been reduced through our method of calculation to $1,832,908.54.

*Depreciation Reserve.* Again, as in our consideration of this problem in connection with the water division earlier in this order, we have had to recalculate depreciation reserve since the company used only the depreciation reserve comprehended by their engineer's appraisal and disregarded the depreciation accruals on the property covered by that appraisal and on the subsequent additions to the plant from the date of the appraisal to the end of the test year, August 31, 1961. With these things considered, the depreciation reserve should be $113,882.73.

*Cash Working Capital.* The same remarks made earlier in this order, in considering this item in relation to docket no. 6526-W, are also applicable here. The commission has found in many proceedings, and finds again here, that ⅛ of the operating expense of the division here involved is adequate. Applying this fraction to the sewer division operating expense as computed hereafter, the provision for cash working capital is found to be $5,712.31, rather than the $13,263.26 contended for by the applicant as to this division of its operations.

*Materials and supplies.* The same observations made earlier in this order on this subject can be repeated here with the result that the company's figure of $1,099.76 must be accepted in the absence of figures that would show the average monthly balance in this account.

*Customers' Deposits.* The amount approved here is 50% of the balance sheet figure of $27,120 or $13,560. For the reason already advanced, this amount is deducted in rate base computation.

The resulting rate base figure for the sewer division, taking into consideration the amounts approved in connection with the several categories treated above, is $1,712,277.88, as opposed to the rate base contended for by the company in the amount of $2,189,640.69.

### Net Operating Income
### Based on Actual Operations

The operating revenues of the sewer division during the test year were shown to be $53,897.31 and the commission does not take exception to this figure.

However, in considering the matters to be deducted from such revenues the commission again finds that the company has understated its case. We have found operating expenses to be greater in this division than indicated by the applicant, primarily because we have allocated certain expenses in a different manner as already noted. The result in the docket first considered was to reduce expenses, while in this docket they are increased somewhat.

The deduction from revenue which makes the big difference here is the depreciation expense item. The commission must insist on this matter if the company is to have reserves to replace plant items as they are retired and thereby continue providing a high grade of service. This item is, therefore, increased from the company's figure as indicated in the summary chart set out below. The other figures advanced by the company have been accepted.

|  | Company | Commission |
|---|---|---|
| Operating Revenues | $ 53,897.31 | $ 53,897.31 |
| Operating Expenses | $ 44,552.93 | $ 45,698.46 |
| Depreciation | 20,318.49 | 31,149.25 |
| Taxes Other Than Income | 7,651.33 | 31,149.25 |
| Total Operating Expenses | $ 72,522.75 | $ 84,499.04 |
| Net Operating Income | $ (18,625.44) | $ (30,601.73) |

Of course, there being a net loss indicated, the company has a minus rate of return.

### Net Operating Income
### Based on Pro-Forma Operations

The billing analysis submitted by the applicant resulted in only an approximation of what revenue would have been produced during the test year if the proposed rate increases had been in effect during the period. It was found, however, to be a fair approximation, and, since the new rates would still produce a negative rate of return, there is little point in being overly critical. Therefore, applying the proposed increased rates to the test year billing analysis, the gross operating revenue to be expected would be $84,761.35. Using the same deductions employed in the chart set out above for actual test year operations, except for the taxes other than income that would be increased because of the gross receipts taxes to $8,901.33, we find the net operating income is still a minus figure or a net loss of $987.69.

So, even with the proposed rate increase of 57.26% producing some $30,864.04 in additional annual revenue, the company does not realize a rate of return on its sewer operation.

### Conclusion As To Both
### Water and Sewer Operations

In docket no. 6526-W, pertaining to the water operation of this applicant, we have found that the increase by the applicant produces a rate of return of only 1.89%. In docket no. 6527-S, pertaining to the sewer operation, the increased rates do nothing more than reduce the applicant's losses to a minimum. Since in one case there is a negligible return and in the other there is no return, we must conclude that this utility is not, at least on the record before us, realizing the fair rate of return which chapter 367, Florida Statutes, contemplates that it should receive.

We do not, however, propose to state here what that return should be and it is doubtful that we could in the absence of evidence on cost of capital for example. Here the applicant has requested particular increases which, if allowed, should result in there being no complaint that a full and fair return was not allowed.

The commission in this regard has no reason to believe that the requested increases, if granted, would cause the applicant's service to the public to suffer. A 28.58% increase in the water division and a 57.26% in the sewer division could only serve to greatly enhance the company's ability to provide service. In fact it approaches the ridiculous to assume that such abrupt increases are necessary to a company that has acquiesced in depressed rates for so long. We know, however, of no effective restraint that can be imposed which would lessen the impact of the precipitous rate increases which we are here constrained to allow. The company appears to be within its rights in seeking it and has exercised its managerial prerogative, of which we must approve, of not seeking the greater increase that it could well justify.

We, therefore, find that the proposed rate increases sought in both dockets are reasonable and are sufficiently compensatory under the circumstances here encountered.

It is, therefore, ordered that the applications filed herein by Margate Utilities Corporation be, and the same are hereby granted. It is further ordered that this order shall become effective 30 days from the date hereof, provided the applicant has in the interim submitted and received approval of appropriate tariff amendments, and the rates herein approved shall apply to all service rendered thereafter until further order of the commission unless this order is sooner stayed by non-compliance with the foregoing condition or by other appropriate action.